UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

CYNTHIA GILETTE, Individually and
Derivatively on behalf of nominal defendant
BLIMPIE OF CALIFORNIA, INC.,

                Case Number: 07 CIV 4697 (CLB)

            **Plaintiff(s),**

            vs.                **Affidavit of Jeffrey Endervelt**

JEFFREY ENDERVELT, BELLE ENDERVELT
and DORA RICCI,

            **Defendants,**

BLIMPIE OF CALIFORNIA, INC.,

            **Nominal Defendant**
------------------------------------------------------------X

STATE OF NEW YORK    )
                              ) ss:
COUNTY OF WESTCHESTER  )

    Jeffrey Endervelt, being duly sworn, deposes and says:

    1.    I am a Director and Officer of the Corporate Defendant, Blimpie of California, Inc. (BOC) I make this Affidavit in Support of Defendants' Motion for A Bond. I am fully familiar with the facts and circumstances of this matter. I make this Affidavit based upon my personal knowledge of the facts contained herein. As to other matters that I allege upon information and belief, I believe them to be true. I am also an attorney admitted to practice law before the States of New York and California and this Court.

    2.    I presently serve as BOC's President and as one of its Directors (Defendant Dora Ricci, my Assistant, is the other Director and Officer). BOC is the Sub Franchisor of Blimpie

1

sandwich shops in Southern California. BOC currently licenses 30 Blimpie sandwich franchises throughout its territory. My past experience includes four (4) years as President and CEO of Blimpie International, Inc., the Master Licensor of Blimpie franchises worldwide, and a Brand that, at the time that I was its leader, had over 1,200 franchises.

3. Since at least 2000 and until 2005, I was paid no salary for all of the duties and responsibilities that I performed for BOC. In 2005 and 2006, I have been paid a salary as President of $10,000 and $50,000 respectively, which I believe is very much below market value for someone in my position and with my experience. On average, I spend approximately 5-7 hours per week of time on BOC business. I do almost all of BOC's legal work including its Uniform Franchise Offering Circular, review all leases for all locations, draft all franchise documents and direct the marketing and operations activities of the staff.

4. My mother, Belle Endervelt, is also a Defendant in this action. Belle is the eighty-five percent shareholder of BOC. Belle is 92 years of age. Her health and her capacity are frail. On August 6, 2005, Belle granted me power of attorney to act on her behalf. As such, since August 6, 2005, Belle has not participated in a shareholder meeting of BOC, and I have participated on her behalf as I am authorized by law. While Plaintiff suggests my participation at meetings, etc., is suspect, it is not and it is quite explainable as I am attorney-in-fact for Belle Endervelt. In fact, I was <u>obligated</u> to participate in these meetings on behalf of my mother, Belle.

5. In the course of the last several years, BOC has made advances and/or loans to me that Plaintiff has put at issue in this suit. BOC and I have done nothing to hide these advances or loans, debt from advances to officers and directors is clearly and unequivocally reflected as an asset of BOC in all of the Audited yearly balance sheets. I note that for a time in the late 1990's and early 2000's, when Plaintiff served as an officer and director of BOC with me, she, also, was

given advances or loans with her and my approval as Directors (there was also for a time in 1996-97 another Director, Jerry Weintraub); despite the same she is now challenging my actions. In fact over time, Plaintiff, a shareholder and then Director and Officer of BOC, was given advances which total in excess of $40,000.00, exclusive of interest. Moreover, Plaintiff was a Director of BOC in 2001-2003, was given oral notice (which is permitted under the by-laws) of meetings, attended meetings and was present when advances to me were approved during those years.

6. As I stated, these advances are just that, loans. Any one, Plaintiff or myself, given such an advance is expected and is legally obligated to re-pay such advances; any such advance remains a debt due and owing to BOC. As is proper, each year on BOC's certified annual financial statements the Balance Sheets clearly reflect the loans to Officers and Directors including the interest accrued on such advances from the Corporation. Since these are insider transactions they are also clearly reported in the footnotes prepared by the Company's CPA's.

7. Additionally, each year, as is appropriate and in accordance with generally accepted accounting principles, the advances carry forward from the previous year. For example, at the end of the fiscal year 2003, the Balance Sheet of BOC reflects advances to Officers and Directors of $335,988. This is the total advances made to Officers and Directors in all prior years (plus interest thereon) that were still due and owing to BOC and were reported on the Audited Balance Sheet as an Asset of BOC. Similarly, at the end of the calendar year 2004, $378,795 of advances made to Officers and Directors were due to BOC and accrued on the Audited Balance Sheet of the Corporation at fiscal year end. Of that, $335,988 was carried over from the previous year and the additional $42,807 were advances made in 2004 plus interest which accrued on the previous years= balance (i.e. the $335,988). Despite the simplicity of this basic accounting principle, in her Complaint, Plaintiff has aggregated each year's debt to come up with an unsupportable and absurd

damage claim of approximately $1.6 Million. Admittedly, over the years covered in the Complaint, I received approximately $257,555 in advances. I provided the Audited financial statements of the Corporation, including the balance sheets for the years relevant to the Complaint, to Plaintiff's counsel before the litigation was instituted. Plaintiff or her counsel may not have read them correctly or may have deliberately overstated the claim; by separate notice, we have requested that Plaintiff amend her Complaint to reflect accurately the figures from the balance sheets.

8. Indeed, in the course of the last several years (2005 and 2006), I have repaid some of the advances in the amount of $60,000. I have admittedly repaid advances by deferring compensation that BOC has agreed to pay to me. Put simply, I have applied my salary to repay my debt.

9. Upon information and belief, I am informed by counsel that under California law, advances from a Corporation to its officers and directors is not per se prohibited so long as they are authorized by the majority of shareholders.

10. As I have acted since August 6, 2005, through the eighty-five per cent ownership interest owned by my mother, Belle Endervelt, the majority shareholder, acting as her attorney in fact, the advances made to me have been authorized. I am informed by counsel that under California Corporations Law 315(g), the ownership of the shares voting to approve loans to directors is the focus, not the individual voting those shares. To the extent that there may have been any procedural defects in any authorizations that were made to me at any time (which I believe there were not), as duly authorized representative for the majority shareholder, I have the ability to remedy those defects and retroactively approve all advances and any payments to me.

11. As such, I believe Plaintiff's suit shows little likelihood of any recovery on behalf of the Corporation because: (1) the actions are permitted under California law; and (2)

4

these actions can be retroactively approved. I acknowledge the debt and have repaid a portion of it and will repay the remainder with interest. To the extent that Plaintiff makes this argument as to me about the loans, she should repay her own debt with the interest that has accumulated.

12. As I devote significant time and resources, including any funding that is required, to BOC, essentially to protect my family's investment in BOC, for which I have received little or no salary, I believe both these advances and any compensation awarded to me would pass the so-called business judgment rule test. It is obviously in the interest of BOC to allow me to devote the necessary amounts of time to it; without these advances or compensation, it would be difficult for me to do all that I have been doing. Not making the advances or awarding me some compensation would detract from my ability to perform all of the services that I do on behalf of BOC and would harm BOC. Put simply, if Plaintiff is successful in this suit, she would harm BOC.

13. I am informed by counsel that under California law, where there is no reasonable probability that a Corporation will benefit from a shareholder derivative lawsuit, the Court shall order the imposition of a bond not to exceed $50,000 as security to the Corporation for its costs and reasonable attorney's fees defending such an action. To answer, respond to, and seek discovery regarding a 136 paragraph and four cause of action complaint, involving corporate matters for the past six years and beyond, I believe that Defendants' legal fees and costs will exceed $50,000.

14. Despite having pled the futility of having approached the Corporation regarding this lawsuit, if Plaintiff had first done that, independent litigation counsel could have been appointed to explain to her that this lawsuit does not benefit the Corporation, which could have saved it litigation costs.

15. For the reasons set forth above, I believe that this action will not benefit the Corporation or its shareholders and a bond should be imposed accordingly.

5

Dated: New Rochelle, New York
       July 31, 2007

Sworn to before me this 1st
day of ~~July,~~ Aug. 2007

_____
Notary Public

          JOHN A. VASILE
    Notary Public, State of New York
         No. 60-4658427
    Qualified in Westchester County
   Commission Expires April 30, 2011

_____
Jeffrey Endervelt

6