STORCH AMINI & MUNVES PC
Two Grand Central Tower, 25th Floor
140 East 45th Street
New York, NY 10017
Bijan Amini (BA-3533)
Kevin Fritz (KF-6788)
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
CYNTHIA S. GILLETTE, individually and
derivatively on behalf of nominal defendant
BLIMPIE OF CALIFORNIA, INC.,

        Plaintiff,                             07 Civ. 4697 (CLB)

    v.

JEFFREY ENDERVELT, BELLE
ENDERVELT and DORA RICCI,

        Defendants,

    and

BLIMPIE OF CALIFORNIA, INC.,

        Nominal Defendant.
-----------------------------------------------------------x

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR A BOND

Plaintiff Cynthia S. Gillette ("Gillette"), individually and derivatively on behalf of nominal defendant Blimpie of California, Inc. ("BOC") ("Plaintiff"), by her attorneys, Storch Amini & Munves PC, submits this memorandum of law in opposition to the motion by defendants Jeffrey Endervelt, Belle Endervelt, and Dora Ricci (collectively, the "Individual Defendants") for a bond pursuant to California Corporations Code § 800.

## STATEMENT OF FACTS

The relevant facts are set forth in the Complaint, which is attached to the Declaration of Steven T. Sledsik. This memorandum of law also refers to factual allegations set forth in the Affidavit of Jeffrey Endervelt.

## ARGUMENT

### I. SINCE THERE IS A REASONABLE POSSIBILITY THAT THE PROSECUTION OF THIS ACTION WILL BENEFIT THE CORPORATION OR ITS SHAREHOLDERS, DEFENDANTS' MOTION SHOULD BE DENIED

Pursuant to section 800(c) of the California Corporations Code, an officer or director of a corporation that is the subject of a shareholder derivative suit may move for an order requiring the plaintiff to furnish a bond on the grounds that "there is no reasonable possibility that the prosecution of the cause of action alleged in the complaint against the moving party will benefit the corporation or its shareholder." Cal. Corp. Code § 800(c)(1) (2007). The burden of establishing this statutory condition is upon the party seeking the posting of the bond. Burt v. Irvine Co., 237 Cal.App.2d 828, 868, 47 Cal. Rptr. 392, 418 (Cal. Dist. Ct. App. 1965).

In their memorandum of law, the Individual Defendants argue that since Jeffrey Endervelt's approval of loans, salary, and other compensation directed to himself were purportedly not improper, this action has no reasonable possibility of benefiting BOC or its shareholders. (Defs.' Mem. of Law at 3-4). Moreover, the Individual Defendants mischaracterize the relief sought by Plaintiff as only seeking Jeffrey Endervelt's repayment of the loans and other compensation, and contend that such limited relief will not benefit BOC. (Id.). However, the relief sought in the Complaint will benefit BOC by ensuring that its proceeds are not misused or improperly disgorged by a director or the controlling shareholder. As for the shareholders, Plaintiff and Belle Endervelt will benefit by receiving dividends from BOC monies

2

that are currently being used by Jeffrey Endervelt for personal satisfaction. Both BOC and its shareholders will benefit from knowing that its directors, officers, and controlling shareholders will fulfill their fiduciary duties and refrain from suppressing the minority shareholder.

A.     **The Loans to Jeffrey Endervelt Violated Cal. Corp. Code § 315**

The Individual Defendants state that the loans to Jeffrey Endervelt "are not per se prohibited" by section 315 of the California Corporations Code. (Id.)(emphasis in original). Section 315 provides that a corporation shall not make any loan of money to any director or officer of the corporation unless the transaction "is approved by a majority of the shareholders entitled to act thereon." Cal. Corp. Code § 315(a). According to the Individual Defendants, Jeffrey Endervelt has only received one loan, which was made prior to 2003. (Endervelt Aff. para. 7). The Individual Defendants claim that Jeffrey Endervelt used his power of attorney over BOC's majority shareholder, Belle Endervelt (Jeffrey Endervelt's mother), to approve the purported single loan to himself. (Defs.' Mem. of Law at 3-4; Endervelt Aff. para. 4).[1] However, Jeffrey Endervelt's Affidavit states that Belle Endervelt did not grant him power of attorney to act on her behalf until August 6, 2005, (Endervelt Aff. para. 4), which was *after* the purported single loan to Jeffrey Endervelt was made. Since California law only authorizes corporate loans to officers or directors that are approved by a majority of the corporation's shareholders, and since, according to the Individual Defendants' own statements, Belle Endervelt did not approve the loan to Jeffrey Endervelt, the loan violates section 315 of the California Corporations Code.

Conceding his violation of California law, Jeffrey Endervelt contends that, to the extent that the loans were procedurally defective, he can utilize his power of attorney over BOC's majority shareholder to retroactively approve the loans. (Endervelt Aff. para. 4). Subsection (g) of section 315 provides that "approval by a majority of the shareholders entitled to act" means,

---

[1] Significantly, Jeffrey Endervelt failed to attach any documents evidencing his power of attorney to his Affidavit.

3

*inter alia*, "a majority of outstanding shares without counting as outstanding or as consenting any shares owned by any officer or director eligible to participate in the ... transaction that is subject to this approval ... ." Cal. Corp. Code § 315(g). Thus, Jeffrey Endervelt offers to use his power of attorney over BOC's majority shareholder to approve loans to himself and to circumvent the purpose of section 315.

Although Jeffrey Endervelt contends that, under California corporate law, "the ownership of the shares voting to approve loans to directors is the focus, not the individual voting those shares", (Endervelt Aff. para. 10), he cites no legal authority for such a proposition. Indeed, even where the requirements for approval of a corporate transaction between a director and its corporation are technically satisfied, transactions that are unfair and unreasonable to the corporation can be set aside. Mueller v. MacBan, 62 Cal.App.3d 258, 277 (Cal. Dist. Ct. App. 1976) (construing former section 820, now section 310, of the Cal. Corp. Code, pertaining to the good faith exercise of power by directors and officers). "[D]ealings between the corporation and a director or a dominant or controlling stockholder ... are subject to strict scrutiny and when challenged the duty is on the director or holder to prove both the good faith of the transaction and its inherent fairness from viewpoint of the corporation and those interested therein." Id. The Individual Defendants are unable to explain how payment of corporate money to Jeffrey Endervelt, approved only by Jeffrey Endervelt through misuse of his alleged power of attorney, is either fair or beneficial to BOC. Where, as here, the circumstances of the transaction does not carry the earmarks if an arm's length bargain, equity will set it aside. Id.

Next, the Individual Defendants note that Jeffrey Endervelt will repay BOC for the loans with interest. (Defs.' Mem. of Law at 4; Endervelt Aff. 6, 11). Conveniently, the Individual Defendants provide no indication of when Jeffrey Endervelt will repay BOC for his loans,

4

already outstanding for years, or at what rate of interest. Moreover, the Individual Defendant do not state whether Plaintiff will be paid the dividends to which she is entitled once Jeffrey Endervelt returns BOC's money, if ever.

The Individual Defendants further argue that Jeffrey Endervelt's use of purported power of attorney over the majority shareholder to approve loans and compensation to himself is protected by the business judgment rule codified in section 309 of the California Corporations Code. (Defs.' Mem. of Law at 4). Section 309 provides, in pertinent part, that a director "shall perform the duties of a director … *in good faith*, in a manner such director believes to be in the best interests of the corporation and its shareholders … ." Cal. Corp. Code § 309(a) (emphasis added). The argument that Jeffrey Endervelt determined, in good faith, that raiding BOC of its assets solely for his personal benefit while failing to pay dividends to the shareholders was in the best interests of BOC, Belle Endervelt, and Plaintiff is comical. While the business judgment rule establishes a presumption that directors' decisions are made in good faith and based upon sound business judgment, an exception to this presumption exists in circumstances which inherent raise an inference of conflict of interest. Everest Investors 8 v. McNeil Partners, 114 Cal.App.4th 411, 429-30 (Cal. Dist. Ct. App. 2003) (citing Lee v. Interinsurance Exchnage, 50 Cal.App.4th 694 (Cal. Dist. Ct. App. 1996)). Thus, the business judgment rule does not protect actions taken with improper motives or as a result of conflict of interest. Id. at 430. Here, Jeffrey Endervelt's improper motive is to deny Plaintiff her share of corporate profits because Plaintiff refused to perjure herself in litigation involving Blimpie International, Inc., as Jeffrey Endervelt had instructed. His conflict of interest is inferable from his managerial authority as a director of BOC on the one hand and his receipt of a substantial amount of BOC funds on the other hand. See Lee, 50 Cal.App.4th at 715 (noting that a conflict of interest is inferable where corporate

directors approve generous termination agreements, or "golden parachutes", for themselves in takeover situations).

The Individual Defendants contend that Jeffrey Endervelt required the loans and compensation to "perform all of the services that [he does] on behalf of BOC" and that the lack of such payments would harm BOC. (Endervelt Aff. para. 12; Defs.' Mem. of Law at 4). However, there are a number of reasons why such rationale is without merit. First, Endervelt concedes that he only performs five to seven hours per week on BOC matters. (Defs.' Mem. of Law at 4). Second, Endervelt can resign as a director and officer of BOC and relieve himself of the purported burden he experiences when handling BOC matters. Third, Jeffrey Endervelt fails to explain why "it would be difficult" for him to serve as a director of BOC without disgorging the corporation of its funds. (Endervelt Aff. para. 12). Fourth, Jeffrey Endervelt admits that he is not serving Plaintiff's interest as minority shareholder of BOC when he states that he "devote[s] significant time and resources ... to BOC, *essentially to protect my family's investment in BOC ... .*" (Id.) (emphasis added). As a director of BOC, Jeffrey Endervelt has a duty to protect Plaintiff's interest and not to enrich himself and his family at Plaintiff's expense.

Even assuming, *arguendo*, that Jeffrey Endervelt's repayment of the loans and compensation, by itself, would benefit neither BOC nor Plaintiff, there is still a reasonable possibility that the prosecution of this matter would confer such a benefit. In Oser v. Wilcox, 338 F.2d 886 (9th Cir. 1964), the defendants moved for an order requiring the posting of security by the plaintiff, whose amended complaint sought, *inter alia*, rescission of a corporate transfer of stock. The district court found that the aforementioned transaction benefited the financially troubled corporation by providing new capital and management, and that setting the transaction aside would cause harm to the corporation. Id. at 891. On this basis, the district court determined

that there was no reasonable possibility that the prosecution of the action would benefit the corporation or its security holders. Id. Upon appeal, the Ninth Circuit reversed and held that other relief sought by the plaintiff, such as an accounting and disgorgement of profits improperly obtained, could be beneficial even without rescinding the corporate transaction. Id. at 891-92. Moreover, the Ninth Circuit noted that since the amended complaint contained the usual prayer for such other and further relief as may be just, a court of equity could fashion relief that would benefit the corporation or its security holders. Id. at 892.

Here, the Complaint not only seeks Jeffrey Endervelt's repayment of the improper loans and other compensation that received, but also the payment of dividends to Plaintiff, the imposition of a constructive trust, and such other relief as the Court deems appropriate. (Sledsik Decl., Exh. 1 at 18-19). Thus, as in Oser, there is a reasonable possibility that the prosecution of this action will benefit either BOC or Plaintiff, if not both.

### B. Correcting the Improper Conduct of the Individual Defendants Will Benefit BOC and its Shareholders

In addition to the improper payment of loans and compensation to Jeffrey Endervelt, the Complaint also seeks to remedy BOC's failure to make its books and records available to Plaintiff, the falsification of minutes by Jeffrey Endervelt and Dora Ricci to nominate BOC directors, and BOC's failure to notify Plaintiff of shareholder meetings. Plaintiff would benefit from an ability to review BOC's books and records because it would enable her to monitor the activities and financial status of the corporation in which she is a part owner. True and accurate corporate minutes would benefit both BOC and Plaintiff by creating a record of corporate activity and meetings that can be relied upon. Proper notification of shareholder meetings will benefit Plaintiff because it would permit her to attend shareholder meetings and, in turn, vote on corporate matters.

## CONCLUSION

For the reasons set forth above, the Individual Defendants' motion for a bond should be denied in its entirety.

Dated: New York, New York
      August 7, 2007

By:    /s/ Kevin Fritz
      Bijan Amini (BA-3533)
      Kevin Fritz (KF-6788)
      Storch Amini & Munves PC
      Two Grand Central Tower, 25th Floor
      140 East 45th Street
      New York, NY 10017
      Tel. (212) 490-4100
      Fax (212) 490-4208