UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

CYNTHIA GILETTE, Individually and
Derivatively on behalf of nominal defendant
BLIMPIE OF CALIFORNIA, INC.,

                **Plaintiff(s),**

vs.

JEFFREY ENDERVELT, BELLE ENDERVELT
and DORA RICCI,

                **Defendants,**

BLIMPIE OF CALIFORNIA, INC.,

                **Nominal Defendant**
------------------------------------------------------------X

Case Number: 07 CIV 4697 (CLB)

**Reply Affidavit of Jeffrey Endervelt**

STATE OF NEW YORK    )
                             ) ss:
COUNTY OF WESTCHESTER  )

    Jeffrey Endervelt, being duly sworn, deposes and says:

    1.    I am a Director and Officer of the Corporate Defendant, Blimpie of California, Inc. ("BOC"). I make this Affidavit in Support of Defendants' Motion for A Bond. I am fully familiar with the facts and circumstances of this matter. I make this Reply Affidavit based upon my personal knowledge of the facts contained herein. As to other matters that I allege upon information and belief, I believe them to be true. I am also an attorney admitted to practice law before the States of New York and California and this Court. I make this Reply Affidavit in Further Support of Defendants' Motion for a Bond and in Reply to the Plaintiff's Opposition Memorandum of Law, dated August 7, 2007.

    2.    As a preliminary statement, to summarize this litigation from Defendants'

1

perspective, it is a typical minority shareholder action brought by Plaintiff because of the lack of control that her minority position gives her in the management of the Corporate Defendant, Blimpie of California, Inc. ("BOC"). Despite all of her aspersions and allegations, Defendants' actions are and have been justified by virtue of Belle Endervelt's ownership of eighty-five per cent of the stock of BOC.

3. Plaintiff's counsel (not even Plaintiff herself in an affidavit) conclusorily states in the Opposition Memorandum of Law that I have said I will vote as majority shareholder to approve any actions retroactively to "circumvent" the purposes of California Corporation Law Section 315. That is a spin on the truth and the facts. However the reality is a majority shareholder has (the obligation and) the legal right and power to act on behalf of a Corporation. I am not circumventing nor have I circumvented anything. My and my mother's actions are authorized by and are in accord with the law.

4. Plaintiff's Opposition Memorandum of Law[1] emphasizes a claimed "entitlement" to dividends if there was any recovery of the advances and salary made by BOC to me. (See, e.g., Opposition Memorandum of Law at pages 2, 5, "Plaintiff and Belle Endervelt [not the Corporation] *will benefit by receiving dividends* . . ."; "the Individual Defendant do [sic] not state whether *Plaintiff will be paid dividends to which she is entitled* once Jeffrey Endervelt returns BOC's money . . .") Clearly, the crux of the matter is Plaintiff's own self interest in dividends and not the purported benefit to the Corporation under which Plaintiff has characterized this lawsuit as a shareholder derivative lawsuit, under which she claims to be acting ostensibly for the benefit of the Corporation. The transparency of Plaintiff's true self-

---

[1] Plaintiff only submitted a Memorandum of Law, without an Affidavit from Plaintiff. While Plaintiff could have supplemented her complaint and the record as to this motion with any facts in admissible form, she did not. As the Court is certainly aware, while Plaintiff's counsel makes quasi-factual allegations in the Memorandum of Law about my motivations in denying Plaintiff dividends because she refused to perjure herself per my instructions in another litigation, those allegations have not been properly put before this Court. (Opposition Memorandum of Law, at page 5) I categorically deny these desperate and absurd allegations that I suborned or attempted to suborn perjury.

serving motives of this lawsuit should be considered by this Court as a clear justification of Defendants' need for a bond.

5. I note several collateral matters arising from Plaintiff's invocation of her purported "entitlement" to dividends from any recoupment of salary or advances to me. First, neither BOC, nor any corporation for that matter, has an obligation to declare dividends simply because the corporation had a profit in any given year. There are a myriad of other business decisions that come into play before a corporation decides to declare a dividend, including the future growth of the corporation. In the case of BOC specifically, the Company had net operating losses in 2004, 2005 and 2006, and dividends would obviously not have been declarable those years. If I repaid all the remaining advances again this year (and accept no salary for all my substantial efforts on behalf of BOC), and BOC suffered a loss again, Plaintiff might still receive no dividend.

6. Second, as I admit, over the years covered in the Complaint, I received approximately $257,555 in advances, exclusive of interest. I also was awarded $60,000 in salary, which I used to repay a portion of the advances. Assuming *arguendo* that Plaintiff prevailed as to this total amount, she only has a personal right to 15% (her interest in the company) of any dividend that might flow from the recovery after corporate debt, etc., were paid the balance under the Plaintiff's scenario would go to the eighty-five (85%) percent shareholder, my mother, who opposes this lawsuit and is not seeking any dividends. Without the leverage of characterizing this lawsuit as a shareholder derivative lawsuit, Plaintiff's damages are well below the jurisdictional amounts required for diversity jurisdiction before this Court and the amount she could theoretically recover is less than the legal fees BOC and the Defendants will be forced to incur to defend this litigation. This lawsuit does not benefit the Corporation, grounds which justify the imposition of a bond.

7. Third, as noted in my affidavit (a fact which is admitted in that it is not controverted by any admissible response made by Plaintiff to our motion), over time, Plaintiff, a shareholder and then Director and Officer of BOC, was given advances which total in excess of $40,000.00, exclusive of interest (which approximately equals fifteen (15%) percent of the total advances made to Officers and Directors). Any personal recovery by Plaintiff of any "dividend" from repayment of the advance should first be applied by BOC to off set Plaintiff's personal loans from BOC before any "dividend" could be properly paid to her.

8. I note also that BOC's net worth at the end of 2006 was $102,265. At the end of 2006, BOC carried $310,295 of advances to officers as an asset, which was obviously incuded in calculating BOC net worth. To pay Plaintiff a dividend of even approximately $15,000 (while paying the majority shareholder Belle Endervelt a dividend of $85,000) results in BOC having a zero net worth. My experience with California franchise licensing authorities and the preparation and submission of California's required Uniform Franchise Offering Circulars are that all of BOC franchises would be in jeopardy of losing its state licenses if BOC showed a zero or negative net worth.

9. In the memorandum in opposition to the motion, Plaintiff's counsel suggests that I could resign as an officer of BOC, and then presumably BOC would hire a President to run its operations and provide it legal advice. I have functioned as BOC's President and have been willing to do so for no salary prior to 2005. In 2005 and 2006, I was paid $60,000. I do not believe that BOC could hire a President with my experience to work as cost effectively as I have done for BOC. As I stated, on average, I spend approximately 5-7 hours per week of time on BOC business and I do almost all of BOC's legal work. Assuming I work 360 hours per year for BOC, at an hourly rate of $300, the costs to BOC for services would exceed $100,000 per annum.

4

10. As noted, my family through my mother Belle Endervelt (also a Defendant in this action) is the eighty-five percent shareholder. While I stated I serve a President to protect my family's interest, my family's interest and BOC's interest are in no way separate.

11. Attached hereto as Exhibit 2 is a copy of my mother's grant of power of attorney to me.

12. Finally, Plaintiff argues there are other aspects of this case that they are claiming to litigate to protect BOC to justify denial of our bond request. (Opposition Memorandum of Law at page 7) Notably, counsel cites Plaintiff's request for corporate documents, etc. In response to Plaintiff's letter request, I invited Plaintiff's counsel to inspect all of BOC's documents, but my request was refused. (A copy of my correspondence to Plaintiff's counsel, dated May 14, 2007 is attached hereto as Exhibit 3.) Upon information and belief, I am informed by counsel that a shareholder's refusal to accept such an invitation is a defense to preclude such a cause of action, which should additionally justify the bond application. Certainly, Defendants have raised the affirmative defenses of laches, equitable estoppel and unclean hands in our answer to Plaintiff's Complaint as to all of the causes of action and specifically the cause of action related to the purported denial of access to the records.

13. Additionally, I deny there was any failure to have properly called shareholder meetings or a failure to have given notice of the same to Plaintiff. As I stated in my previous affidavit, I <u>orally informed</u> Plaintiff of <u>all</u> meetings prior to 2004 while she and I were the Directors of BOC[2] and the best of my memory is that she participated in meetings with no objection in 2002 and 2003. (As Plaintiff has not submitted an affidavit denying that she had oral notice of meetings, this fact should be accepted as true.) Finally, as to the other meetings,

---

2 There was no shareholder meeting in 2004. I was granted power of attorney by Belle Endervelt, my mother, August 2005. I was given a proxy by my mother, Belle Endervelt to act as her agent at the June 2005 shareholders' meeting. (A copy of the proxy is annexed hereto as Exhibit 4.) As such, there were <u>nothing</u> ultra vires about any of the actions to approve the advances.

notice was sent to Plaintiff, and we have certified return receipts for most of those notices. (See Exhibit 5, annexed hereto.)

14. For the reasons set forth above and in my previous Affidavit, I believe that this action will not benefit the Corporation or its shareholders and a bond should be imposed accordingly.

Dated: New Rochelle, New York
       August 14, 2007

_____
Jeffrey Endervelt

Sworn to before me this 14th
day of Augsut, 2007

_____
Notary Public

SUSAN D'AMICO
Notary Public, State Of New York
No. 4641566
Qualified In Westchester County
Commission Expires June 30, 20 11