UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X

CYNTHIA GILETTE, Individually and
Derivatively on behalf of nominal defendant
BLIMPIE OF CALIFORNIA, INC.,

                          Plaintiff(s),

                vs.

JEFFREY ENDERVELT, BELLE ENDERVELT
and DORA RICCI,

                         Defendants,

BLIMPIE OF CALIFORNIA, INC.,

                NOMINAL DEFENDANT
----------------------------------------------------------X

Case Number: 07 CIV 4697 (CLB)

Affidavit of Jeffrey Endervelt

STATE OF NEW YORK     )
                                  ) ss:
COUNTY OF WESTCHESTER )

       Jeffrey Endervelt, being duly sworn, deposes and says:

       1.     I am a Director and Officer of the Corporate Defendant, Blimpie of California, Inc. ("BOC") I make this Affidavit in Support of Defendants' Motion for the imposition of sanctions on the Plaintiff and her attorneys pursuant to Rule 11 of the Federal Rules of Civil Procedure based upon their refusal to amend the factual misrepresentations contained in the Complaint in this case. I am fully familiar with the facts and circumstances of this matter. I make this Affidavit based upon my personal knowledge of the facts contained herein. As to other matters that I allege upon information and belief, I believe them to be true. I am also an attorney admitted to practice law before the States of New York and California and this Court.

1

2. I presently serve as BOC's President and as one of its Directors (Defendant Dora Ricci, my Executive Assistant, is the other Director and Officer). BOC is a closely-held corporation, and is the Sub Franchisor of Blimpie sandwich shops in Southern California. BOC currently licenses 30 Blimpie sandwich franchises throughout its territory. My past experience includes four (4) years as President and CEO of Blimpie International, Inc., the Master Licensor of Blimpie franchises worldwide, and a Brand that, at the time that I was its CEO, had over 1,200 franchises. Since at least 2001 and until 2005, I was paid no salary for all of the duties and responsibilities that I performed for BOC. In 2006 and 2007, the Board of Directors authorized a bonus to me as President of $10,000 and $50,000 respectively, which I believe is very much below market value for someone in my position and with my experience. This Bonus was paid in 2007.

3. The Plaintiff, Cynthia Gillette, is the sole minority shareholder of BOC. At all times material hereto, she was, and still is, a fifteen percent shareholder of BOC. Until approximately 2003, Plaintiff was also an Officer and Director of BOC. Plaintiff brings this action both in her individual capacity and derivatively on behalf of BOC.

4. My mother, Belle Endervelt, is also a Defendant in this action. Belle is an eighty-five percent shareholder of BOC, and is the corporation's sole majority shareholder. Belle is 92 years of age. Her health and her capacity are frail. On August 6, 2005, Belle granted me power of attorney to act on her behalf. As was my obligation pursuant to the power of attorney, since August 6, 2005, I have acted on her behalf with respect to the rights and obligations arising from her ownership of BOC shares.

5. In the instant matter, Plaintiff asserts various claims arising from certain loans and/or advances that BOC made to me, as an Officer, during the years from 2002 through 2006. All of the loans were properly approved under the by-laws of BOC as well as applicable law. Moreover, all of

these loans and/or advances have been clearly disclosed and reflected as an asset of BOC on each of its duly audited yearly balance sheets and financial statements for the relevant years. Attached hereto as Exhibit A is a copy of BOC's audited financial statements and balance sheets for the years 2001 and 2002, along with the independent auditor's report of Habif, Arogeti & Wynne, LLP. Attached as Exhibit B is a copy of BOC's audited financial statements and balance sheets for the years 2003 and 2004, along with the independent auditor's report of Habif, Arogeti & Wynne, LLP. Attached as Exhibit C is a copy of BOC's audited financial statements and balance sheets for the years 2005 and 2006, along with the independent auditor's report of EZKR Certified Public Accountants & Consultants.

6.  Throughout the relevant time period, Plaintiff, as a shareholder (and former officer and director of BOC) was furnished with copies of all of these certified and audited financial statements and balance sheets. Additionally, I provided copies of these documents to Plaintiff's counsel prior to the commencement of the instant action.

7.  In her Complaint, the Plaintiff makes the following false factual assertions regarding the size of the loans or advances that were made to me from 2002 through 2006:

- That BOC loaned $282,788.00 to me in 2002;
- That BOC loaned $335,988.00 to me in 2003;
- That BOC loaned $378,795.00 to me in 2004;
- That BOC loaned $382,794.00 to me in 2005;
- That BOC loaned $310,295.00 to me in 2006; and
- That the loans to me from BOC total $1,690,660.00.

See Complaint at Paragraphs 9, 19, 29, 39, 49, 59, 98(a), and 105.

8.  It is apparent that, in formulating the above allegations regarding the amount of loans

3

or advances made to me by BOC during each of the individual years, and <u>contrary to generally accepted accounting principles</u>, Plaintiff and her counsel erroneously used the dollar amounts listed under "Advances to officers" on each year's certified and audited balance sheet as separate loans and advances rather than what they represented —the total amount due BOC at the end of each fiscal year. In accordance with generally accepted accounting principles, the advances listed reflect not only the advance or loan made during that year, but also carry forward the balance of any loan or advance that remained outstanding from previous years.

9. For example, at the end of the fiscal year 2003, the Balance Sheet of BOC reflects advances to Officers and Directors of $335,988. (See Exhibit B) This figure represents the total advances made to Officers and Directors not only in 2003, but also in all prior years (plus interest thereon) that were still due and owing to BOC as of the end of December, 2003. Similarly, at the end of the calendar year 2004, the total of outstanding advances made to Officers and Directors amounted to $378,795. Of that amount, $335,988 was carried over from the previous year. Accordingly, the total amount of the advances to officers made in 2004 (including interest on previous years' debt) was the difference between $378,795.00 and $335,988.00, or $42,807. Needless to say, that is significantly less than the $378,795.00 that Plaintiff alleged in the Complaint.

10. It is apparent that the Plaintiffs arrived at the vastly inflated amount of $1,690,660.00 of alleged total loans by improperly aggregating the overstated yearly loan amounts, which already represented aggregations of loans made in prior years. In other words, in the Complaint, the Plaintiffs count the same loans multiple times, as well as previous balances not relevant to the proceeding (including loans made to the Plaintiff herself), to arrive at the amounts alleged.

11. Simply put, in preparing the Complaint, the Plaintiffs and their counsel disregarded the application of basic accounting principles to BOC's audited financial statements when they

4

aggregated each year's already aggregated debt to come up with an unsupportable and absurd total damage claim in excess of $1.6 Million based upon those loans or advances.

12. Assuming <u>arguendo</u> that I cannot show any repayments or credits, <u>based upon the certified financial statements</u>, the maximum amount of money advanced to officers from 2002 to 2006 is $183,735 (the difference of the amount due BOC at the end of 2001, $199,059, and the $382,794, the highest amount the advances to officers figure reached between 2002 and 2006).

13. Notwithstanding which figures are applied, there is no reasonable possibility that Plaintiff will be able to produce or discover any evidence that I received in excess of $1.6 million in loans and advances over the period of time covered by the Complaint.

15. Plaintiff or her counsel may have misunderstood BOC's financial statements, or they may have deliberately misused the figures to overstate the claim. In either case, the claims made in the Complaint regarding the amounts of the loans at issue could not have withstood any reasonable inquiry. In any event, by separate notice, we requested that Plaintiffs and their counsel amend the Complaint to more accurately reflect the amounts of the loans using the figures from the balance sheets. To date, they have refused to withdraw or amend the representations in the Complaint regarding the amounts of the loans at issue.

16. The Plaintiff's continued insistence on misrepresenting the nature and amount of the loans or advances will result in significant prejudice to the Defendants. First, this is simply not a case involving in excess of $1.6 million. Secondly, Defendants will be forced to incur the costs involved in disputing this baseless claim; and finally, it will also needlessly consume the time of the Court.

17. Lastly, I note for the Court that the Plaintiff should be familiar with the workings of loans and advances from the Corporation and its certified and audited financial statements, because

during the period encompassing the late 1990's and early 2000's, when she served as an officer and director of BOC, she was given advances or loans totaling approximately $38,000.00 (exclusive of interest) with her and my approval as officers and directors. Additionally, according to Plaintiff's counsel's website (storchamini.com), Attorney Bijan Amini, who is one of the signatories to the Complaint, has a Masters degree in Economics. Despite Attorney Amini's notable background, Plaintiff and counsel's Complaint ignores generally accepted accounting principles. Accordingly, I respectfully submit that not only does Plaintiff lack a good faith basis for her allegations regarding the amount of loans or advances made to me, she has no good faith basis for bringing her complaint challenging my conduct as a Director and Officer of BOC.

18.   For the reasons set forth above, I believe that sanctions upon the Plaintiffs and their counsel for their deliberate insistence on continuing to significantly misrepresent the facts of this matter, after having be notified of the source of their error, and having an opportunity to investigate, are necessary to deter this sort of frivolous conduct going forward.

Dated: New Rochelle, New York
       September 19, 2007

*Jeffrey Endervelt*

Sworn to before me this 19th
day of September, 2007

*Notary Public*

**WILLIAM H. McKENNA**
NOTARY PUBLIC, STATE OF NEW YORK
NO. 02MC6108710
QUALIFIED IN WESTCHESTER COUNTY
COMMISSION EXPIRES APRIL 19, 2008