

BLIMPIE OF CALIFORNIA, INC.

MINUTES OF SHAREHOLDER'S MEETINGt

HELD AT: 145 Huguenot Street

New Rochelle, New York

October 8th, 2007

ATTENDEES:

        JEFFREY K. ENDERVELT
        Chief Executive Officer

        KEVIN FRITZ, ESQ.,
        as proxy for shareholder
        Spencer Gillette

        STEVEN SLEDZIK, ESQ.
        Attorney for Blimpie of
        California

        DORA RICI,
        Director and Secretary

J&L REPORTING SERVICE
of Westchester, Inc.
200 East Post Road
White Plains, New York  10601
914-682-1888
Lisa Regen, Court Reporter

2

MR. ENDERVELT: I call the meeting to order. First of all I want to note that there is a quorum present. Mr. Fritz is present, representing Spencer Gillette. I'm representing Mrs. Endervelt, as Power of Attorney.

This meeting a called pursuant to notice that was given on August 30th, 2007. There is a stenographer present to record the minutes of the meeting.

The first order of business is to vote upon two resolutions. Mr. Fritz is here as proxy for shareholder Spencer Gillette.

The first resolution that is going to come before the stockholders today is a resolution that reads and you have it there, resolved that all loans and advances by the Corporation to officers, directors, and or shareholders as set forth on the spreadsheet, as amended, and provided

3

1
2    to the Stockholders or their
3    representatives, for the period
4    January 1st, 2002 to the present, are
5    hereby ratified and confirmed and
6    that these advances shall bear
7    interest at the rate of six percent
8    and shall be due upon demand.
9         That being said, we'll open the
10   floor to questions to the chairman
11   for five minutes.
12        MR. FRITZ:  First on behalf of
13   Spencer Gillette, I'll note for the
14   record that pursuant to Article 2,
15   Section A, of the bylaws, we object
16   to this discussion and vote on the
17   loans on the grounds that the
18   relevant documentation underlying the
19   loans was not provided to us either
20   previously or at this point.
21        We set forth our request not
22   only in the spring and through our
23   document requests as part of the
24   litigation, but also in your letter
25   dated September 18th, 2007.

4

Also, note for the record that under Section 315, of the California Corporate Code, the votes of an officer or director do not count when approving a transaction such as the one that is currently pending.

We believe that Mr. Endervelt is improperly using his Power of Attorney over the majority shareholders' shares to approve what he is classifying as loans and what we believe is simply income to himself. And we believe that the votes of Ms. Endervelt or Belle Endervelt, Jeffrey Endervelt's mother, should not be counted.

We believe that the loans are improper in that they give no benefit to the corporation. We believe that Mr. Endervelt is engaging in tax fraud by classifying income as loans.

MR. ENDERVELT: Objection. If you want to stick to what is relevant to this shareholder's meeting, that

5

is fine. Independent comment that you want to present in your lawsuit is a different story.

MR. FRITZ: I would like to put it on the record. Thanks.

MR. ENDERVELT: We're not going to get into the personal stuff. That is not relevant at this meeting. Let's stick to the facts and any questions you might have regarding the facts.

MR. FRITZ: You said it was a discussion.

MR. ENDERVELT: You're bringing the same innuendo that you constantly use without any basis whatsoever. We're not going to get into a diatribe about that. You have a question about them, that is fine. Let's leave the personal attacks out of it.

MR. FRITZ: In the notice, you said it was a discussion.

MR. ENDERVELT: Personal

```
 1                                                    6
 2     attacks are different.
 3          MR. FRITZ:  We're setting forth
 4     our basis --
 5          MR. ENDERVELT:  You have no
 6     basis for that.  It's nothing more
 7     than an attempt to cloud the record
 8     for your benefit.  And let's just
 9     move on.
10          MR. FRITZ:  I'm going to finish
11     my statement.  We believe that Mr.
12     Endervelt is engaging in.
13          MR. ENDERVELT:  We're not going
14     to go --
15          MR. FRITZ:  And he is
16     putting --
17          MR. ENDERVELT:  I'm directing
18     this meeting.  This is not a
19     deposition and I direct what goes in
20     and doesn't go in.
21          MR. FRITZ:  We believe that as
22     a shareholder, we have a duty to
23     report Mr. Endervelt to the IRS for
24     this.
25          MR. ENDERVELT:  Stop.  Grow up,
```

```
                                              7
 1
 2      would you please?  The absurdity of
 3      this kind of nonsense.  You're
 4      finished?
 5            MR. FRITZ:  I'm finished with
 6      my statement.
 7            MR. ENDERVELT:  Do you have any
 8      other questions?
 9            MR. FRIT:  No, since we were
10      not given documents.
11            MR. ENDERVELT:  You were not
12      given any documents?
13            MR. SLEDZIK:  He was given the
14      spread sheet.
15            MR. FRITZ:  Is there any
16      underlying documentation showing how
17      the loans were paid, what interest is
18      accruing?  Is there a loan agreement?
19            MR. ENDERVELT:  There are no
20      loan agreements.
21            MR. FRITZ:  Is there any other
22      documentation?
23            MR. ENDERVELT:  Other than
24      the --
25            MR. SLEDZIK:  There are no
```

```
 1                                                    8
 2        agreements with his client either.
 3            MR. ENDERVELT:  There are no
 4        loan agreements, neither the loan I
 5        got or Ms. Gillette got.  There is no
 6        agreements.
 7            MR. FRITZ:  I don't know what
 8        you're referring to when you say the
 9        money Spencer got.
10            MR. ENDERVELT:  The ten
11        thousand six hundred eighty-four
12        dollars that Ms. Gillette took and
13        received in the company, the ten
14        thousand dollar check in 2002, which
15        Ms. Gillette made out to herself and
16        signed.
17            MR. FRITZ:  Are you referring
18        to the payment of her salary as an
19        officer?
20            MR. ENDERVELT:  No.
21            MR. FRITZ:  Let me finish my
22        sentence, referring to the
23        approximately ten thousand dollars
24        that she received as her compensation
25        as an officer and director of Blimpie
```

```
                                                9
    International?
         MR. ENDERVELT:  No.
         MR. FRITZ:  You're saying this
    separate --
         MR. ENDERVELT:  I'm talking
    about Blimpie of California.
         MR. FRITZ:  You're stating this
    ten thousand dollars was not for her
    salary.
         MR. ENDERVELT:  That's correct.
    There is also another ten thousand
    four hundred dollars that was given
    to Ms. Gillette in '04.  We're not
    quite sure what that is for.  We're
    trying to figure it out.  We'll give
    you copies of the checks, one of
    which Ms. Gillette made out to
    herself.
         MR. FRITZ:  I also note for the
    record that someone else on several
    situations, someone else signed Ms.
    Gillette's name to checks.
         MR. ENDERVELT:  Who would that
    other person be?
```

```
                                                    10
         MR. FRITZ:  She doesn't know.
         MR. ENDERVELT:  It's either
Cynthia Gillette or Ava Sumpter, her
sister.
         MR. FRITZ:  What about you?
         MR. ENDERVELT:  Counsel, you
must be desperate.  Our signatures
are not in the same ball game.  That
is pretty desperate tactics.  We have
copies of the checks and or not -- in
some cases we don't have copies of
checks.  We have copies of checkbook
stubs, because we were not able to
find them.  You can have those.
         MR. SLEDZIK:  Off the record.
         (Off-the-record discussion.)
         MR. ENDERVELT:  Any further
questions?
         MR. FRITZ:  Can you explain the
purpose of the loans?
         MR. ENDERVELT:  They were
advances made to me and Ms. Gillette
during the period of time in
question, mostly because we could not
```

```
 1                                           11
 2         -- we were not taking anything as
 3         salary in those days.  The company
 4         couldn't afford to pay me a salary.
 5             If the company needed money,
 6         the only one who is going to provide
 7         the money is me or my mother.  No one
 8         else is putting up money in this
 9         company.  No one else has.  And so,
10         if we had to repay it, we needed to
11         be able to repay it because if the
12         company's net worth goes below zero,
13         it won't get proof from Ufox and
14         State of California.  So I have to
15         put money back into the company.  So
16         we just took it as advances.  I have
17         repaid it since then.
18             MR. FRITZ:  I'm a little
19         unclear about something.  How does
20         the corporation benefit by advancing
21         you money?
22             MR. ENDERVELT:  Because it is
23         not paying me a salary which it
24         couldn't afford to pay.
25             MR. FRITZ:  Can it not pay you
```

```
                                              12
 1
 2     a salary?
 3           MR. ENDERVELT:  Are you working
 4     for nothing?
 5           MR. FRITZ:  No.
 6           MR. ENDERVELT:  Me neither.
 7           MR. FRITZ:  My salary isn't
 8     being discussed here.
 9           MR. ENDERVELT:  I'm not working
10     for nothing.
11           MR. FRITZ:  My understanding is
12     you needed an advance because you
13     didn't want to work for nothing.
14           MR. ENDERVELT:  The company
15     gave me an advance because I
16     requested it.
17           MR. FRITZ:  How does the
18     corporation benefit from that?
19           MR. ENDERVELT:  Because I'm
20     doing work for the corporation that I
21     have not charged them for.
22           MR. FRITZ:  Is there someone
23     else that can run the corporation --
24           MR. ENDERVELT:  No.
25           MR. FRITZ:  Let me finish.  Is
```

```
                                                    13
 1
 2      there someone else that can run the
 3      corporation and not take an advance
 4      or salary?
 5           MR. ENDERVELT:  Probably could
 6      hire someone for seventy, eighty,
 7      ninety, a hundred thousand dollars.
 8           And the only way to pay that
 9      person is if I put money into the
10      corporation to pay them.
11           MR. FRITZ:  You have not done
12      that executive search --
13           MR. ENDERVELT:  No, I have no
14      desire to do the executive search.
15      The stockholders are very happy with
16      me running the company.
17           MR. FRITZ:  -- let me finish my
18      statement.  You have no basis to
19      state there is not an individual out
20      there who would run this corporation
21      for free, without taking an advance
22      so to speak or a salary?
23           MR. ENDERVELT:  So duly noted,
24      sir.
25           MR. FRITZ:  I object to your
```

14

1
2  statement saying that the
3  shareholders want you as the director
4  and officer and executive.  Ms.
5  Gillette does not.
6        MR. ENDERVELT:  The majority
7  does.  There being no further
8  questions?
9        MR. FRITZ:  I have no further
10 questions.
11       MR. ENDERVELT:  I'll have a
12 vote all those voting aye, signify
13 approval.  Aye on behalf of Mrs.
14 Endervelt's counsel.
15       MR. FRITZ:  Ms. Gillette votes
16 nay and notes that the votes of Mr.
17 Endervelt for Mrs. Endervelt, under
18 California law, do not count.  It's
19 our understand the vote fails.
20       MR. ENDERVELT:  Vote as the
21 next resolution; resolved that all
22 purchases, contracts, contributions,
23 compensations, acts, proceedings,
24 elections, appointments and advances
25 by the Board of Directors during the

15

1
2   period January 1, 2002 to June 30,
3   2007, ane all acts of the officers of
4   the Corporation for said period be
5   and the same are hereby ratified and
6   confirmed.
7           MR. FRITZ:  Spencer Gillette
8   votes no, and notes that her votes
9   are the only ones that should count.
10  It's unclear because the purchaser
11  contracts, contributions,
12  compensation acts and other items
13  listed in this vote are unspecified.
14  So it's unclear as to whether or not
15  Belle Endervelt's vote should count.
16          MR. ENDERVELT:  Duly noted.  I
17  on behalf of Ms. Endervelt, vote yes.
18  The motion carries.  No further
19  business to come before the meeting?
20  Motion to adjourn is made.  All in
21  favor signify by saying aye.  No
22  opposition.  Meeting is adjourned.
23  Thank you very much.
24
25

CERTIFICATION

This is to certify that the foregoing is a true and accurate of the Statement on the Record as taken and transcribed by me.

*Lisa Regen*
_____
Lisa Regen
Court Reporter