STORCH AMINI & MUNVES PC
Two Grand Central Tower, 25th Floor
140 East 45th Street
New York, NY 10017
Bijan Amini (BA-3533)
Kevin Fritz (KF-6788)
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
CYNTHIA S. GILLETTE, individually and
derivatively on behalf of nominal defendant
BLIMPIE OF CALIFORNIA, INC.,

        Plaintiff,                             07 Civ. 4697 (CLB)

    v.

JEFFREY ENDERVELT, BELLE
ENDERVELT and DORA RICCI,

        Defendants,

    and

BLIMPIE OF CALIFORNIA, INC.,

        Nominal Defendant.
------------------------------------------------------------x

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR THE
<u>APPOINTMENT OF A GUARDIAN AD LITEM</u>**

      Plaintiff Cynthia S. Gillette ("Gillette"), individually and derivatively on behalf of nominal defendant Blimpie of California, Inc. ("BOC") ("Plaintiff"), by her attorneys, Storch Amini & Munves PC, submits this memorandum of law in support of her motion, pursuant to Rule 17(c) of the Federal Rules of Civil Procedure, for an order appointing a guardian ad litem to represent defendant Belle Endervelt in this action.

**PRELIMINARY STATEMENT**

Gillette is a 23% shareholder of BOC, which owns the exclusive right to use the "Blimpie" trademark and technical information in California. The remainder of the shares belong to Belle Endervelt, the ninety-two year old apparently incompetent mother of defendant Jeffrey Endervelt. The crux of this case is that Jeffrey Endervelt, under the guise of his mother's General Power of Attorney,[1] has made himself the principal, if not sole, beneficiary of all of BOC's income. In the past eight years, he has: "loaned" himself hundreds of thousands of BOC's dollars for which there is no prospect of repayment, on which no taxes have been paid, and which have partially been expensed as uncollectible "bad debt"; awarded himself "bonuses"; personally "borrowed" hundreds of thousands of dollars of the franchisees' designated advertising fund; paid tens of thousands of dollars in "expenses" and "management fees" to entities owned and controlled by him; and reimbursed himself for medical and other personal expenses. During that same period, Gillette and Belle Endervelt, the sole shareholders of BOC, have received no dividends from the corporation.

Jeffrey Endervelt, again under the guise of his mother's General Power of Attorney, has engaged counsel for himself, the corporation, and his mother, and represented the interests of all three in this action. Recently, in response to Gillette's discovery requests, Jeffrey Endervelt and his counsel advised that Belle Endervelt was incapable of responding to any discovery demands. According to her physician, Belle Endervelt suffers from dementia and short-term memory impairment, unable to even identify the date, day, season, or where she resides.[2] A guardian ad litem is warranted under the circumstances.

---

[1] The General Power of Attorney is Exhibit C to the Declaration of Kevin Fritz (hereinafter "Fritz Decl.").
[2] A letter from defense counsel and an affidavit from Dr. David Blum are attached as Exhibits D and E, respectively, to the Fritz Decl.

**STATEMENT OF FACTS**

A.  **Breach of Fiduciary Duties by the Individual Defendants**

Although the Complaint only pertains to Jeffrey Endervelt's disgorgement of funds recorded as "advances to officers" in the financial statements, documentation obtained subsequent to the commencement of litigation reveals that Jeffrey Endervelt has transferred BOC monies to unrelated entities owned by him as well as monies that were designated as part of the franchisees' advertising funds and were to have been used for that purpose.

1.  "Advances to Officers"

During his deposition, Jeffrey Endervelt admitted that a formal shareholder vote to approve the "loans" to him did not occur until October 8, 2007, years after he pocketed hundreds of thousands of BOC's funds. (Fritz Decl., Exh. F at 59:21 – 61:8; 71:3-9; 78:21 – 79:20; 108:9-12).[3] Jeffrey Endervelt admitted that he has not paid taxes on these "loans." (Id. at 66:24-25). There are no written loan agreements obligating his repayment of the "loans" or designating a rate of interest. (Id. 56:14 – 57:21). Even worse, there is no deadline by which Jeffrey Endervelt must repay the "loans." Instead, Jeffrey Endervelt must repay the "loans" whenever the Board of Directors, which he chairs, demands it. (Id. 57:25 – 58:9). Predictably, Jeffrey Endervelt confirmed that he would not demand himself to repay the monies. (Id. 58:10 – 59:3). These "loans" are nothing more than income for which neither he nor the corporation have accounted for to any taxation authority. (Id. at 66:24 – 67:12). Moreover, since Jeffrey Endervelt has no intention of repaying the "loans," such advances are listed in BOC's books as "bad debt" expenses, in annual amounts of $25,000 or greater, and are purportedly not collectible. (Fritz Decl., Exh. A, Statement of Cash Flows for each financial statement).

---

[3] The transcript from Jeffrey Endervelt's deposition will be referred to as "Endervelt Tr."

3

Following the filing of the Complaint, Jeffrey Endervelt, as President of BOC, presided over a shareholder meeting on October 8, 2007 to retroactively approve "loans" that BOC had made to him almost a decade earlier. Although Gillette voted against the approval of the "loans," (Fritz Decl., Exh. G at 14:11-19), the vote passed since Belle Endervelt voted to approve the advances.[4]

Jeffrey Endervelt then held a vote at the October 8, 2007 meeting to approve *all acts* by the Board of Directors and officers from January 1, 2002 to June 30, 2007. (Shareholder Meeting Tr. 14:20 – 15:6). Gillette voted against the resolution. (Id. 15:7-15). Through Jeffrey Endervelt's misuse of the General Power of Attorney, Belle Endervelt voted to approve all of those acts by the Board of Directors and officers.

    2.    <u>Monies Taken from Cooperative Advertising Fund</u>

Pursuant to the franchise agreements, BOC's franchisees contribute money to an advertising cooperative fund. Such funds belong to BOC's franchisees and are only supposed to be used to promote those franchisees' businesses in California. (Affidavit of Cynthia S. Gillette, para. 3). Nevertheless, according to BOC's financial statements covering the last few years, Jeffrey Endervelt has "borrowed" hundreds of thousands of dollars from the advertising cooperative fund. For example, at the end of 2003, Jeffrey Endervelt had "borrowed" over $340,000 from the advertising cooperative fund. (Fritz Decl., Exh. A). Properly used, the advertising fund enhances the branding of Blimpie franchisees in California and increases the revenues thereof. If the franchisees' revenues increase, then the amount of royalties paid to BOC increases. In turn, larger royalties to BOC, its only form of income, increases the value of Belle Endervelt's ownership in BOC. However, Jeffrey Endervelt has simply pocketed advertising

---

[4] The transcript from the October 8, 2007 BOC shareholder meeting will be referred to as 'Shareholder Meeting Tr."

monies and defrauded the franchisees rather than utilize the funds to increase the value of Belle Endervelt's interest. More importantly, in addition to his personal tax fraud, Jeffrey Endervelt has committed fraud for which Belle Endervelt, as the controlling shareholder that approved the raiding of the cooperative advertising fund, is also liable.

      3.      <u>Assets Transferred to X2Y1 and Subsidiaries Thereof</u>

Jeffrey Endervelt is the Chief Executive Officer and majority shareholder of X2Y1, an entity he formed in 2001. Importantly, *X2Y1 has no legal relationship to BOC*. (Endervelt Tr. 13:13 – 17:22). Nevertheless, in June 2006 and February 2007, the BOC Board of Directors voted to contribute $12,000 per month to X2Y1 for the purported sharing of various expenses. (Fritz Decl., Exh. H).[5] According to its 2007 general ledger, BOC paid over $120,000 to X2Y1, including a $10,000 "management fee" to Maui Tacos (a subsidiary of X2Y1). BOC is also owed $57,000 from "loan[s]" to X2Y1. In 2006, BOC paid over $81,000 in "management fees" to X2Y1. Even though Jeffrey Endervelt is the Chief Executive Officer of both BOC and X2Y1, he could not provide any basis or support for these payments to X2Y1 and Maui Tacos. (Endervelt Tr. 150:1 – 152:2). Jeffrey Endervelt further testified, and BOC's ledgers reveal, that money from BOC's franchisees may have been paid to X2Y1 instead of being used to promote the franchisees. (<u>Id.</u> 152:8-153:9). As the person that approved these acts, Belle Endervelt is liable to BOC, Gillette, and the franchisees.

Quite simply, Jeffrey Endervelt used his power of attorney over BOC's majority shareholder to retroactively approve corporate "loans" to himself that he will never repay and other corporate malfeasance. One of the major consequences of this improper use of power of attorney is that Belle Endervelt, as the majority shareholder, has breached her fiduciary duties to

---

[5] Although the minutes from the June 2006 and February 2007 BOC Board of Director meetings note that a "detail[ed] copy of the expenses being shared" would be attached to the minutes, Gillette was not provided with such information.

5

BOC and Gillette by approving "loans" and other interested transactions with no corporate purpose.

## ARGUMENT

I. **SINCE JEFFREY ENDERVELT'S INTERESTS CONFLICT WITH THOSE OF BELLE ENDERVELT, PLAINTIFF'S MOTION SHOULD BE GRANTED**

A. <u>Rule 17(c)</u>

Federal Rule of Civil Procedure 17(c) provides, in pertinent part, that "The court shall appoint a guardian ad litem for an … incompetent person not otherwise represented in an action or shall make such other order as it deems proper for the protection of the … incompetent person." Fed. R. Civ. P. 17(c). The Second Circuit has noted that "Federal courts in the Southern District of New York and other circuits have repeatedly affirmed a court's power to determine that the interests of a[n] … incompetent will be best represented by a … guardian ad litem and not by an authorized representative such as a … general guardian." <u>Ad Hoc Comm. of Concerned Teachers v. Greenburgh No. 11 Union Free Sch. Dist.</u>, 873 F.2d 25, 29-30 (2d Cir.1989). More specifically, "the courts have consistently recognized that they have inherent power to appoint a guardian ad litem when it appears that the … general representative has interests which may conflict with those of the person he is supposed to represent." <u>Hoffert v. General Motors Corp.</u>, 656 F.2d 161, 164 (5th Cir. 1981), <u>cert. denied sub nom.</u> <u>Cochrane & Bresnahan v. Smith</u>, 456 U.S. 961 (1982); <u>see</u> <u>also</u> <u>Ad Hoc Comm. of Concerned Teachers</u>, 873 F.2d at 30 (noting that use of such power is particularly appropriate where an infant's authorized representative, among other things, has interests which conflict with that of infant); 6A Wright, Miller & Kane, Federal Practice and Procedure: Civil § 1570 (2d ed. 1990).

**B.     Jeffrey Endervelt's Interests in Disgorging BOC of Assets Conflict with Belle Endervelt's Interests**

In <u>Weaver by Weaver v. N.Y. City Empl. Retirement Sys.</u>, No. 88 Civ. 2662, 1988 WL 85480 (S.D.N.Y. Aug. 11, 1994), an incompetent's niece brought an action, as the next friend, to challenge a retirement system's alleged policy of cutting off payments to a pensioner perceived to be incompetent until a committee or conservator was appointed or a psychiatrist's opinion had been obtained.  The retirement system moved for the appointment of a guardian ad litem to represent the incompetent, claiming that the niece had a conflict of interest. <u>Id.</u> at *1.  The conflict of interest was that the niece was apparently endorsing the retirement system's pension checks to the incompetent, failing to apply the funds to the incompetent's financial obligations arising out of his hospitalization, and applying the funds for her own benefit. <u>Id.</u>  Without making a finding that the niece engaged in any impropriety, this Court granted the motion and found that the niece had an interest that may have conflicted with the incompetent's interests. <u>Id.</u>  The Court reasoned that if the niece "has unsupervised access to the funds of [the incompetent], that creates the potential for using such funds in a fashion that may not be in the best interest of [the incompetent] although it might well be in accord with his expressed wishes." <u>Id.</u>

A similar ruling is warranted here.  At the October 8, 2007 shareholder meeting, Belle Endervelt, through Jeffrey Endervelt, approved all prior corporate acts, which includes *all* of the aforementioned corporate malfeasances.  Jeffrey Endervelt has used his unfettered access to Belle Endervelt's shareholder vote in a manner that on its face is not in the best interests of Belle Endervelt, but for his own pecuniary benefit.  Jeffrey Endervelt's diversion of BOC's assets are depriving Belle Endervelt of dividends and increasing her liability as the controlling shareholder that approved such conduct and failed to remove Jeffrey Endervelt as an officer and director.  Thus, Jeffrey Endervelt's interest in unjustly enriching himself to the detriment of BOC conflicts

with Belle Endervelt's interest in carrying out her fiduciary duties.  Accordingly, a guardian ad litem is necessary.

## **CONCLUSION**

For the reasons set forth above, Plaintiff's motion should be granted in its entirety.

Dated:  New York, New York
        December 26, 2007

                                        By:_____/s/ Kevin Fritz_____
                                              Bijan Amini (BA-3533)
                                              Kevin Fritz (KF-6788)
                                              Storch Amini & Munves PC
                                              Two Grand Central Tower, 25th Floor
                                              140 East 45th Street
                                              New York, NY  10017
                                              Tel. (212) 490-4100
                                              Fax (212) 490-4208