STORCH AMINI & MUNVES PC
Two Grand Central Tower, 25th Floor
140 East 45th Street
New York, NY 10017
Bijan Amini (BA-3533)
Kevin Fritz (KF-6788)
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
CYNTHIA S. GILLETTE, individually and
derivatively on behalf of nominal defendant
BLIMPIE OF CALIFORNIA, INC.,

       Plaintiff,                    07 Civ. 4697 (CLB)

    v.

JEFFREY ENDERVELT, BELLE
ENDERVELT and DORA RICCI,

       Defendants,

    and

BLIMPIE OF CALIFORNIA, INC.,

       Nominal Defendant.
-----------------------------------------------------------x

## PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION FOR THE APPOINTMENT OF A GUARDIAN AD LITEM

Plaintiff Cynthia S. Gillette ("Gillette"), individually and derivatively on behalf of nominal defendant Blimpie of California, Inc. ("BOC") (collectively, "Plaintiff"), by her attorneys, Storch Amini & Munves PC, submits this memorandum of law in further support of her motion, pursuant to Rule 17(c) of the Federal Rules of Civil Procedure, for an order appointing a guardian ad litem to represent defendant Belle Endervelt in this action.

**PRELIMINARY STATEMENT**

As set forth in Plaintiff's initial memorandum of law, defendant Jeffrey Endervelt has misused his general power of attorney over his mother, defendant and BOC majority shareholder Belle Endervelt, to engage in corporate acts that solely result in his personal enrichment and that are to the detriment of BOC. By utilizing Belle Endervelt's majority shares in such fashion, Jeffrey Endervelt has placed himself in an untenable position. If he claims that Belle Endervelt's shares were not used to approve corporate acts, then he has raided BOC of funds without proper approval from the shareholders. If, on the other hand, he claims that Belle Endervelt's shares were used to approve corporate acts, then Belle Endervelt is liable for breach of fiduciary duty for sanctioning his conversion of BOC funds without corporate purpose. For this reason, Jeffrey Endervelt's interests conflict with that of Belle Endervelt and the appointment of a guardian is necessary.

In their memorandum of law, Defendants inconsistently argue that Belle Endervelt is mentally impaired and should be excused from responding from discovery requests, but not so deficient to be appointed a guardian to protect her interests. Unfortunately for Defendants, the statements of their own counsel and those of Belle Endervelt's physician confirm that she is incompetent. Thus, undoubtedly, she is unaware of the malfeasance in which her son Jeffrey Endervelt has admittedly engaged while armed with control over her majority shares. Such malfeasance includes unexplainable "management fees" paid by BOC to entities owned and controlled by Jeffrey Endervelt, "loans" from BOC to Jeffrey Endervelt for which there is no obligation to repay, and "borrowings" by Jeffrey Endervelt of monies that are exclusively supposed to be used to advertise the franchisees' businesses. In a desperate effort to maintain control over BOC and use the corporation to his exclusive benefit, Jeffrey Endervelt claims that

Plaintiff's allegations are "totally unsubstantiated" despite testimonial and documentary evidence to the contrary.

## ARGUMENT

### I. BELLE ENDERVELT IS NOT ADEQUATELY REPRESENTED BY EITHER JEFFREY ENDERVELT OR JONES GARNEAU, LLP

In their memorandum of law, Defendants rely upon Manners v. O'Garra, 99 Civ. 12115, 2001 WL 487431 (S.D.N.Y. May 7, 2001) for the proposition that defense counsel Jones Garneau, LLP ("Jones Garneau") is adequately representing Belle Endervelt. (Defs.' Memo of Law at 2). However, Manners is distinguishable in a number of significant respects. In that case, plaintiff Manners sought the appointment of a guardian for himself, Manners, 2001 WL 487431, at *1, in sharp contrast to Plaintiff's instant request for the appointment of a guardian for Belle Endervelt. More significantly, plaintiff Manners was described by his counsel as "rational, intelligent and perfectly competent." Id. at *2. Here, Dr. David Blum, M.D. affirmed, under oath, that Belle Endervelt suffers from dementia and short-term memory loss and is unable to even identify the date, day, season, or where she resides. (Fritz Decl. dated Dec. 26, 2007, Exh. E). Furthermore, in Manners, plaintiff's counsel contended that plaintiff's psychiatric condition would not prevent him from responding accurately and reliably to deposition questions. Manners, 2001 WL 487431, at *2. In the instant case, Jones Garneau has stated that Belle Endervelt's condition renders her unable to respond to any discovery demands. (Fritz Decl. dated Dec. 26, 2007, Exh. D). The motion seeks to relieve Belle Endervelt of Jeffrey Endervelt's unfettered access to her majority shareholder vote and her increasing liability that he has created by using her vote for his own pecuniary benefit. Since Jones Garneau's opposition to this motion supports the grossly misguided notion that Jeffrey Endervelt is an appropriate guardian

3

for Belle Endervelt, it cannot be said that the firm is adequately representing her and not merely the personal interests of Jeffery Endervelt.

Next, Defendants cite Neilson v. Colgate-Palmolive Co., 199 F.3d 642, 651 (2d Cir. 1999), for the proposition that Belle Endervelt possesses a liberty interest in avoiding the stigma of being found incompetent. (Defs.' Memo of Law at 2). In Neilson, the only issue raised by the party for whom a guardian was appointed concerned the procedures followed by the district court in finding that the party was incompetent. Neilson, 199 F.3d at 651. Here, defense counsel itself designated Belle Endervelt as incompetent when it supplied an affidavit from her physician swearing that she could only "moderately function[]" and that she suffered from dementia. (Fritz Decl. dated Dec. 26, 2007, Exh. E). Thus, any stigma from which Belle Endervelt may suffer from a finding that she is incompetent will have arisen from her own counsel's actions and from the diagnosis of her own physician.

Defendants also contend that the appointment of a guardian may constitute a waste of judicial resources and cite Mandaville v. Wertheimer, 01 Civ. 4469, 2001 WL 432689 (S.D.N.Y. Mar. 19, 2002) and Burke v. Coughlin, 86 Civ. 1174E, 1995 WL 350349 (S.D.N.Y. May 30, 1995). In Mandaville, this Court denied the plaintiffs' application for a guardian because it found that they were not incompetent. Mandaville, 2001 WL 432689, at *3. Defendants in this matter conceded that Belle Endervelt is incompetent when it refused to respond to discovery requests on the grounds that her condition prohibited her from doing so and also provided evidence of her incompetence in the form of an affidavit from her doctor. (Fritz Decl. dated Dec. 26, 2007, Exh. D, E).

In Burke, the appointment of a guardian was deemed futile since any guardian's sole source of evidence would have been the unintelligible plaintiff and since the plaintiff's attorney

4

adequately represented him. Burke, 1995 WL 350349, at *1-*2.  A guardian appointed in the instant case would be able to gather documentary evidence from BOC's records as well as testimonial evidence from Jeffrey Endervelt, Dora Ricci, and other BOC employees.  Additionally, Jones Garneau is not adequately representing Belle Endervelt since it has refused to respond on her behalf to discovery requests.  Although Defendants note that courts have permitted a litigant's representative to sign interrogatories on behalf of an incompetent, (Defs.' Memo of Law at 3, citing Miller v. Holzmann, 238 F.R.D. 111 (D.D.C. 2006)), this Court can rest assured that Jeffrey Endervelt will craft Belle Endervelt's interrogatory responses in a manner best-suited to his interests and not hers.  Accordingly, judicial resources would not be "wasted" by preventing Jeffrey Endervelt from exploiting his power of attorney for his own economic benefit and to Belle Endervelt's legal detriment.

Defendants further submit that there is not "ample evidence" that Belle Endervelt is incompetent. (Defs.' Memo of Law at 3-4, citing Blatch v. Franco, 97 Civ. 3918, 1998 WL 265132, at *9 (S.D.N.Y. May 26, 1998)).  Confusingly, Defendants ignore the statements of their own counsel, Jones Garneau, and of Belle Endervelt's own physician, Dr. David Blum.  In a letter dated November 27, 2007, Steven Sledzik, Esq. of Jones Garneau stated that "*[b]ecause of Mrs. Endervelt's condition, her statements are inherently unreliable* and cannot be relied upon by either party or the Court in order to respond to the Requests for Admission and Interrogatories that Plaintiff has served upon her." (Fritz Decl. dated Dec. 26, 2007, Exh. D)(emphasis added).  More significantly, Dr. David Blum's affidavit states that:

> Mrs. Endervelt … was on the upper end of moderately functioning and indicate[s] *cognitive impairment*.  Among the questions that Mrs. Endervelt was not able to answer was the date, the day of the week, the season of the year, and the State, the County and the building in which she was. … *My diagnosis of Mrs. Endervelt is that she is suffering from dementia and short-term memory impairment.*

(Fritz Decl. dated Dec. 26, 2007, Exh. E)(emphasis added).  Thus, the claim that there is not "ample evidence" of Belle Endervelt's incompetence is simply made in bad faith.

Lastly, Defendants point to Jeffrey Endervelt's deposition testimony in support of an argument that Plaintiff's allegations regarding his conduct are without merit. (Defs.' Memo of Law at 4-5).  However, none of the testimonial evidence demonstrates that Jeffrey Endervelt's interests are consistent with that of Belle Endervelt.  For example, right before Jeffrey Endervelt testified that there "might have been a board of directors meeting" to approve "loans" to him, he stated there was no shareholder meeting to approve the same. (Fritz Decl. dated Dec. 26, 2007, Exh. F at 61:3-25).  Furthermore, while Defendants' memorandum of law insinuates that Jeffrey Endervelt testified that he would repay the "loans," (Defs.' Memo of Law at 5), a basic reading of the transcript reveals that he will only repay the loans when Gillette repays money that she does not owe to BOC. (Fritz Decl. dated Dec. 26, 2007, Exh. F at 135:9-15).  In other words, Jeffrey Endervelt has no intention of repaying BOC the money that he wrongfully took from it.  As another example of Defendants' attempt to mislead this Court, they point to Jeffrey Endervelt's testimony that BOC money was transferred to X2Y1, an entity owned and controlled by Jeffrey Endervelt, because the two corporations shared expenses. (Defs.' Memo of Law at 5).  Conveniently, however, Defendants neglect to direct the Court to Jeffrey Endervelt's testimony that he has no idea why "management fees" were paid by BOC to X2Y1. (Fritz Decl. dated Dec. 26, 2007, Exh. F at 150:1 – 152:2).

## CONCLUSION

For the reasons set forth above, as well as those set forth in Plaintiff's initial memorandum of law, the motion should be granted in its entirety.

Dated: New York, New York
February 5, 2008

By:_____/s/ Kevin Fritz_____
Bijan Amini (BA-3533)
Kevin Fritz (KF-6788)
Storch Amini & Munves PC
Two Grand Central Tower, 25th Floor
140 East 45th Street
New York, NY 10017
Tel. (212) 490-4100
Fax (212) 490-4208

7